## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: <br><br> FRASER PAPERS INC., et al.,[1] <br><br> Debtors in Foreign Proceedings. | ) Chapter 15 <br> ) <br> ) Case No. 09-12123 (KJC) <br> ) <br> ) Jointly Administered <br> ) <br> ) **RE: D.I. 98** |

### ORDER AUTHORIZING AND APPROVING SALE OF DEBTORS' SPECIALTY PAPERS BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363

Upon the motion (the "Motion"),[2] of Fraser Papers Inc. ("Fraser"), as foreign representative of Fraser and its affiliated captioned debtors and participants (collectively, with Fraser, the "Debtors") in a proceeding (the "Canadian Proceeding") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), for entry of an order, as more fully described in the Motion, authorizing and approving sale of the Debtors' right, title and interest to the Edmundston Assets, the Juniper Assets, the Madawaska Assets, the Plaster Rock Assets, the Portland Assets, and all of the other property and assets of every kind and description used by or in connection with or otherwise relating, in whole or in part, to the Business (collectively (the "Purchased Assets") to the successful bidder, free and clear of all liens, claims, interests and Encumbrances pursuant to section 363 of the Bankruptcy Code, except as set forth in the Sale Agreement (defined below); and the Debtors having filed a Notice

---

[1] These jointly administered cases are those of the following debtors: Fraser Papers Inc., FPS Canada Inc., Fraser Papers Holdings Inc., Fraser Timber Limited, Fraser Papers Limited, and Fraser N.H. LLC.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion or the Sale Agreement, as the case may be.

of Successful Bidder designating Brookfield Asset Management Inc.'s or its designee, which is Twin Rivers Paper Company Inc. as the Canadian purchaser of the Canadian assets (the "Canadian Purchaser") and Twin Rivers Paper Company LLC as the U.S. purchaser of the U.S. assets (the "U.S. Purchaser" and, collectively with the Canadian Purchaser, the "Purchaser") as the purchaser of the Purchased Assets pursuant to the Asset Purchase Agreement executed with the Purchaser on December 22, 2009 (as amended from time to time, the "Sale Agreement"); and the Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at the Sale Procedures Hearing; and upon the record of the Sale Procedures Hearing and these chapter 15 cases, and after due deliberation thereon, and good cause appearing therefore it is hereby

## FOUND AND DETERMINED THAT:[3]

A.  The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157(b)(1) and 1334(b);

B.  Venue of these cases and the Motion in this district is proper under 28 U.S.C. § 1410. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2);

C.  Adequate notice of the Motion has been given as set forth therein and no other or further notice is necessary;

D.  The legal and factual bases set forth in the Motion and the record in these proceedings establish just cause for the relief requested therein, and that such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest;

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

2

E. Based upon the affidavits of service and publication filed with, and representations made to, the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 15 cases and these proceedings and substantially complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Sale Procedures Order; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities;

F. The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion, the Court's Order Authorizing and Approving (i) Sale Procedures, (ii) Notice Procedures, and (iii) Setting a Date for Sale Hearing [D.I. 122], and the Canadian Approval and Sales Process Order. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets;

G. The Sale Procedures were substantively and procedurally fair to all parties. The Debtors conducted the Sale process substantially in accordance with the Sale Procedures;

H. The Sale Agreement and the Sale were negotiated and have been and are undertaken by the Debtors and the Purchaser on commercially reasonable terms without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m). As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code;

I. Cause has been shown as to why this Order should not be subject to the

3

stay provided by Rule 6004 of the Federal Rules of Bankruptcy Procedure;

    J.  The total consideration provided by the Purchaser for the Purchased Assets being conveyed pursuant to the Sale Agreement is the highest and best offer received by the Debtors, and the Purchase Price constitutes fair consideration and fair value for the Purchased Assets;

    K.  A sale of the Purchased Assets other than one free and clear of all interests and Encumbrances (as defined in the Motion) would yield substantially less value for the Debtors' estates than the Sale. Therefore, the Sale contemplated by the Sale Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest;

    L.  The Debtors may sell the Purchased Assets free and clear of all interests and Encumbrances to the extent provided in the Sale Agreement and this Order because, with respect to each creditor asserting an interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2). Any holders of interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f);

    M.  Neither the Debtors nor the Purchaser engaged in any conduct that would cause or permit the Sale Agreement or the consummation of the Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code;

    N.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale. No brokers were involved in consummation of the Sale, and no brokers' commissions are due to any Person in connection with the Sale; and

    O.  The Sale contemplated by the Sale Agreement is in the best interests of the

4

Debtors and their estates, creditors, interest holders and all other parties in interest; and therefore:

IT IS HEREBY ORDERED THAT:

1. The relief requested in the Motion is GRANTED.

2. All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, or settled, are hereby overruled on the merits.

3. The final approval and vesting order (the "Vesting Order") approving the Sale by the Canadian Court in the Canadian Proceedings, attached hereto as Exhibit A, is hereby given full force and effect in the United States.

4. Pursuant to sections 105 and 363 of the Bankruptcy Code and as set forth in the Vesting Order, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Sale Agreement and this Order; and (ii) perform, consummate, implement and close fully the Sale Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement and the Transaction contemplated therein.

5. Pursuant to section 363(f) of the Bankruptcy Code, the Sale of the Purchased Assets in accordance with this Order and the Vesting Order will vest (a) the Canadian Purchaser with all rights, title and interest of the Debtors to the Canadian Purchased Assets (as defined in the Vesting Order) and will be a legal, valid and effective transfer of the Canadian Purchased Assets free and clear of all liens, claims and interests, whether known or unknown, fixed, liquidated, contingent or otherwise, including any claims held by any of the Debtors' or their affiliates' creditors, vendors, suppliers, employees (individually or under successor employer provisions of federal and state legislation) or lessors, and any other person, except as

5

expressly provided by the Sale Agreement or this Order and (b) the U.S. Purchaser with all rights, title and interest of the Debtors to the U.S. Purchased Assets (as defined in the Vesting Order) and will be a legal, valid and effective transfer of the U.S. Purchased Assets free and clear of all liens, claims and interests, whether known or unknown, fixed, liquidated, contingent or otherwise, including any claims held by any of the Debtors' or their affiliates' creditors, vendors, suppliers, employees (individually or under successor employer provisions of federal and state legislation) or lessors, and any other person, except as expressly provided by the Sale Agreement or this Order.

6. Except as expressly provided in the Sale Agreement or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon the Closing the Purchased Assets shall be sold, transferred or otherwise conveyed to Purchaser free and clear of all liens claims and interests, and, for greater certainty, Encumbrances, with all such liens and claims, and, for greater certainty, Encumbrances, to attach to the proceeds of Sale of the Purchased Assets in the order of their priority, and with the same validity, priority, force and effect which they now have as against the Purchased Assets, subject to the rights, claims, defenses, and objections, if any, of the Debtors and all parties in interest with respect to such liens, claims and interests and for greater certainty, Encumbrances. All persons or entities holding liens and claims, and, for greater certainty, Encumbrances, in, to or against the Purchased Assets shall be, and they hereby are, forever barred from asserting such liens, claims and interests against the Purchaser, its successors and assigns or such Purchased Assets after Closing, except as expressly provided in the Sale Agreement or this Order. Notwithstanding anything in this Order to the contrary, the Debtors shall pay to Stantec Consulting Limited ("Stantec") at the Closing the sum of $55,000.00(CDN) in cash or immediately available funds, and upon such payment Stantec's

mechanics' lien recorded in the Aroostook County Registry of Deeds (Northern District) in Book 1661, Page 336 shall be discharged. Further, Stantec shall have an allowed unsecured claim against Fraser Papers Limited in the amount of $35,788.62(CDN) and an allowed unsecured claim against Fraser Papers, Inc. in the amount of $1,092.87(CDN). Notwithstanding anything in this Order to the contrary, the Debtors shall pay to Sullivan & Merritt Constructors, Inc. ("SM") at the Closing the sum of $40,000.00(US) in cash or immediately available funds and SMC's mechanics' lien recorded in the Aroostook County Registry of Deeds (Northern District) in Book 1654, Page 260 is hereby discharged. Further, SMC shall have an allowed unsecured claim against Fraser Papers Limited in the amount of $9,529.12(US).

7. Notwithstanding anything in this Order to the contrary, the Debtors shall pay to Warehouse Specialists, Inc. ("WSI") at the Closing the sum of $37,428.77(US) in cash or immediately available funds and WSI's warehouseman's lien or liens, if any, are hereby discharged.

8. Except as otherwise provided in the Sale Agreement, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all liens, claims and interests, and, for greater certainty, Encumbrances, and all such persons or entities are hereby directed to surrender possession of the Purchased Assets to the Purchaser at the time of Closing.

9. The Purchaser is found to be a good faith purchaser and granted all of the protections provided under section 363(m) of the Bankruptcy Code.

10. The consideration to be paid by the Purchaser for the Purchased Assets under the Sale Agreement and the terms and conditions thereunder constitute transfers for

reasonably equivalent value and fair consideration and may not be avoided under section 363(n) of the Bankruptcy Code.

11. This Order (a) is and shall be effective as a determination that, upon the Closing, except as expressly provided in the Sale Agreement, the Sale Procedures Order, or this Order, all liens, claims and interests, and, for greater certainty, Encumbrances, existing as to the Purchased Assets prior to the closing have been unconditionally released, discharged and terminated in each case as to the Purchased Assets and (b) shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee of the Purchased Assets free and clear of all liens, claims and interests, except as expressly provided in the Sale Agreement or Sale Procedures Order.

12. Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

13. Except with respect to enforcing the terms of the Sale Agreement, the Sale Procedures, the Sale Procedures Order and/or this Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the Transaction contemplated in or by the Sale Agreement, the Sale Procedures, the Sale Procedures Order or this Order.

14. In the absence of a stay of the effectiveness of this Order, in the event that the Purchaser and the Debtors consummate the Transaction contemplated by the Sale Agreement at any time after entry of this Order, then with respect to the transaction approved and authorized herein, the Purchaser, as a purchaser in good faith within the meaning of section 363(m) of the Bankruptcy Code, shall be entitled to all of the protections of section 363(m) of the Bankruptcy Code in the event this Order or any authorization contained herein is reversed or modified on appeal.

15. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transaction contemplated by the Sale Agreement and this Order.

16. Until these cases are closed or dismissed, the Court shall retain exclusive jurisdiction in the United States: (a) to enforce and implement the terms and provisions of this Order and the Sale Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements, documents and instruments executed in connection therewith; (b) to compel transfer of the Purchased Assets in the United States to the Purchaser; (c) to compel the Purchaser to perform all of its obligations under the Sale Agreement with respect to Purchased Assets in the United States; (d) to resolve any disputes, controversies or claims arising out of or relating to the Sale Agreement relating to the Purchased Assets in the United States; and (e) to interpret, implement and enforce the provisions of this Order.

17. The terms and provisions of this Order and the Sale Agreement shall be binding on and inure to the benefit of the Debtors, the Purchaser, the Debtors' estates, the Debtors' creditors and all other parties in interest, and any successors of the Debtors, the Purchaser and the Debtors' creditors, including any trustee(s), examiner(s) or receiver(s)

appointed in these cases or under any chapter of the Bankruptcy Code or any other law, and all such terms and provisions shall likewise be binding on such trustee(s), examiner(s) or receiver(s) and shall not be subject to rejection or avoidance by the Debtors, the Debtors' estates, the Debtors' creditors or any trustee(s), examiner(s) or receiver(s).

18. The failure to include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of that provision, it being the intent of the Court and the parties that the Sale Agreement be approved and authorized in its entirety.

19. Any conflict between the terms and provisions of this Order and the Sale Agreement shall be resolved in favor of this Order.

20. The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Sale Agreement prior to Closing without further order of the Court.

21. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary: (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order. Time is of the essence in closing the transaction and parties to the Sale Agreement shall be authorized to close the Sale as soon as possible consistent with the terms of this Order.

22. Notwithstanding the foregoing, and notwithstanding all references in this Order to the Purchased Assets being sold free and clear of all liens, interests, claims and Encumbrances, the Debtors' interest in 2,440,078 pounds of paper in the warehouse in Hermon, Maine owned by LMS Acquisition Corporation (the "LMS Paper" and "LMS," respectively)

shall be transferred and conveyed to the Purchaser subject to a valid, enforceable, first priority warehouseman's lien (the "LMS Lien") under the laws of the State of Maine. With the consent of the Purchaser, and as described on the record at the hearing conducted on the Motion, it is hereby ordered that the Purchaser has assumed and is liable for the Debtors' obligation to LMS in the amount of $201,014.43 (USD) (the "LMS Claim") and that the Purchaser shall satisfy such obligation as follows: (a) payment of Fifty Thousand Dollars ($50,000.00 (USD)) at the Closing; (b) payment to LMS of Fifty Thousand Dollars ($50,000.00) (USD) on or before the thirtieth (30th) day after the Closing; (c) payment of Fifty Thousand Dollars ($50,000.00) (USD) on or before the sixtieth (60th) day after the Closing; and (d) payment of Fifty-one Thousand Fourteen Dollars and Forty-three Cents ($51,014.43) (USD) on or before the ninetieth (90th) day after the Closing. All payments shall be in cash or immediately available funds.

23. The Debtors, the Purchaser and LMS have stipulated and agreed that: (w) the LMS Paper consists of approximately 2,440,078 pounds of paper; (x) the LMS lien attaches to all of the LMS Paper; (y) LMS shall release the lien on twenty-five percent (25%) of the LMS Paper (i.e. 610,019.5 pounds of the LMS Paper) upon receipt of each of the four (4) installment payments described above, and (z) to the extent the Purchaser pays down the obligation to LMS sooner than the schedule described in this paragraph, then LMS shall release the lien on LMS Paper to the Purchaser at the rate of one (1) pound of paper for every .082 dollars received. Purchaser shall have the right to designate what portion of the LMS Paper shall be released from the lien in any given instance, and after release, such paper shall be available to Purchaser in the ordinary course of business.

24. Without change in the payment schedule set forth above, LMS agrees that Purchaser may obtain release of part or all of LMS Paper from the LMS lien and from the

11

warehouse in advance of the release schedule set forth above by substitution of other paper that has, in LMS's reasonable discretion, liquidation value that is substantially equivalent to the paper that LMS releases (the "Substitute Paper"), and that the Purchaser hereby does and is deemed to have granted LMS a lien in such Substitute Paper to secure payment of the LMS Claim. To the extent any of the LMS Paper has been replaced by Substitute Paper, such Substitute Paper shall be subject to the release schedule set forth above in clauses (y) and (z), and shall otherwise be subject to all rights of LMS as the holder of a valid, enforceable, properly perfected warehouseman's lien under Maine law to secure payment of the LMS Claim. Purchaser agrees to pay all of LMS's unpaid usual and customary charges for warehouse services rendered after the Debtors' bankruptcy filing date (for clarity, LMS and MMA have stipulated and agreed that as of April 2, 2010, such amount was $17,028.97, and that such amount will increase only by the amount of LMS's usual and customary charges to the Debtors, and will decrease to the extent of any payments received by LMS) and to pay all of LMS's usual and customary charges for storing and handling the LMS Paper and the Substitute Paper following the Closing.

25. In the event the Purchaser fails to pay LMS in accordance with the schedule set forth above, then LMS (a) shall have the right to accelerate all amounts due, (b) shall have all rights of enforcement against its collateral and against the Purchaser under Maine law, including without limitation under 11 M.R.S.A. §§7-209, et seq., (c) shall be entitled to add to its allowed secured claim against the Purchaser following a default by Purchaser, all reasonable costs and fees incurred in the enforcement of its rights, including, without limitation, reasonable attorneys' fees, and (d) shall be entitled to charge and collect from Purchaser interest at the rate of eight percent (8%) per annum. LMS shall have the right to file a financing statement in connection with the LMS Lien against the LMS Paper. LMS shall cooperate in the

filing of, and authorizes Purchaser to file, a termination of such financing statement following the payment in full of the LMS Claim. Provided only that LMS fulfills its obligations in this Order, the Purchaser shall have no right of setoff or recoupment, and shall have no defenses or counterclaims excusing the Purchaser's obligations to make the payments to LMS in satisfaction of the LMS Claim, as set forth above.

26. The Purchaser has consented to the provisions set forth in this Order relating to LMS, the LMS Claim, the LMS Paper and the LMS Lien.

27. The Debtors stipulate, and it is hereby Ordered that, as of April 5, 2010, the Debtors have no claims against LMS.

28. As set forth in the Notice of Revision or Disallowance for Voting and/or Distribution Purposes issued by PricewaterhouseCoopers Inc., the Canadian Court-appointed Monitor of the Debtors, dated September 25, 2009, MMA has an allowed unsecured claim in the Canadian Proceeding[4] against Fraser Papers Limited in the amount of $571,809.78 (USD) and a claim against Fraser Timber Limited in the amount of $33,232.00 (USD). The Debtors stipulate that they have no claims against MMA as of April 5, 2010, other than (i) an open transit claim against MMA in the amount of $2,678.07, but acknowledge that MMA reserves the right to contest the same; and (ii) the right to assert a right of setoff and/or recoupment as to the MMA Claim (but not the LMS Claim) with respect to a so-called "clay rebate" in the amount of $120,920.36. All rights of MMA to oppose any assertion by the Debtors of such rights of setoff or recoupment regarding the clay rebate have been properly preserved. For avoidance of doubt,

---

[4] By Order dated August 5, 2009, this Court granted the Debtor's Motion to Approve Order Pursuant to 11 U.S.C. § 105(a), 1521 and 1525, Recognizing Canadian Claims Order in the United States. The effect of this Court's August 5, 2009 Order is to permit the identification and determination of claims against the Debtors to occur in the Canadian Proceeding.

13

Fraser may assert a right of setoff and/or recoupment as to the clay rebate to reduce the MMA Claim only, and not as a dollar-for-dollar offset against any dividend that may be payable by the Debtors to MMA from the Debtors' bankruptcy case.

29. Nothing in this Order shall affect the obligation of the Purchaser to pay LMS for services provided by LMS following the Closing.

30. The Sale Agreement and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

31. The provisions of this Order are nonseverable and mutually dependent.

32. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: April 7, 2010
Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

3486800.4