# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>FRASER PAPERS INC., et al.,[1]<br><br>Debtors in Foreign Proceedings. | ) Chapter 15<br>)<br>) Case No. 09-12123 (KJC)<br>)<br>) Jointly Administered<br>)<br>) Hearing Date: November 3, 2010 at 3:30 p.m. (ET)<br>) Objection Deadline: October 27, 2010 at 4:00 p.m. (ET) |

## DEBTORS' MOTION FOR SUPPLEMENTAL ORDER (I)(A) AUTHORIZING AND APPROVING SALE PROCEDURES IN CONNECTION WITH SALE OF GORHAM NEW HAMPSHIRE MILL AND RELATED ASSETS, (B) SCHEDULING HEARING TO CONSIDER SALE OF ASSETS, AND (C) AUTHORIZING AND APPROVING NOTICE PROCEDURES; AND (II) AUTHORIZING AND APPROVING THE SALE OF DEBTORS' GORHAM NEW HAMPSHIRE MILL AND RELATED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Fraser Papers Inc. ("Fraser"), in its capacity as foreign representative of Fraser and its affiliated captioned debtors and participants (collectively, with Fraser, the "Debtors"), in proceedings (the "Canadian Proceedings") under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"), pending before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), hereby moves this Court (the "Motion") for the entry of an order, substantially in the form annexed hereto as Exhibit A (the "Sale Procedures Order"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i)(a)

---

[1] These jointly administered cases are those of the following debtors: Fraser Papers Inc., FPS Canada Inc., Fraser Papers Holdings Inc., Fraser Timber Limited, Fraser Papers Limited, and Fraser N.H. LLC.

authorizing and approving the sale procedures as set forth herein (the "Sale Procedures"), in connection with debtor Fraser N.H. LLC's proposed sale (the "Transaction" or "Sale") of the Gorham Mill (as defined below); (b) setting the time, date and place of a hearing to consider the sale (the "Sale Hearing") and setting objection and offer deadlines with respect to the Sale; and (c) authorizing and approving the form of sale procedure notice, attached hereto as Exhibit B, and approving the manner of solicitation of offers and notice of the sale (collectively, the "Notice Procedures"); (ii) authorizing and approving the sale of the Assets (as defined below), pursuant to the form of asset purchase agreement (the "Sale Agreement") to be provided to the interested parties, free and clear of liens, claims, encumbrances, and interests, pursuant to section 363 of the Bankruptcy Code, except as set forth in the final Sale Agreement; and (iii) granting such other and further relief as the Court deems just and proper. In support of this Motion the Debtors respectfully state as follows:

## Jurisdiction

1. The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. These matters are core proceedings within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408, 1409, and 1410.

2. The statutory bases for the relief requested herein are sections 105, 363, 1521, and 1525 of the Bankruptcy Code, Rules 2002, 6004 and 9014 of the Bankruptcy Rules and Rule 6004-1 of the Local Rules.

## Background

### A. Introduction

3. On June 18, 2009 (the "Petition Date"), the Debtors commenced the Canadian Proceedings under the CCAA. PricewaterhouseCoopers Inc. was appointed as a Monitor (the "Monitor") in the Canadian Proceedings. Shortly thereafter, and pursuant to an

order entered by the Canadian Court in the Canadian Proceedings, Fraser, as foreign representative of the Debtors, filed chapter 15 petitions pursuant to sections 1504 and 1515 of the Bankruptcy Code, commencing these chapter 15 cases in aid of the Canadian Proceedings, seeking recognition of the Canadian Proceedings as a "foreign main proceeding" as defined in section 1502(4) of the Bankruptcy Code and seeking other necessary relief in aid of the Canadian Proceedings.

4. The Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. On July 14, 2009, this Court entered an order granting, *inter alia*, recognition of the Canadian Proceedings as foreign main proceedings pursuant to section 1517(b)(1) of the Bankruptcy Code [D.I. 61].

5. On June 19, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 13].

**B. Debtors' Corporate Structure and Business**

6. Each of the Debtors is a direct or indirect wholly-owned subsidiary of Fraser. Specifically, Fraser owns all of the issued and outstanding shares of FPS Canada Inc. ("FPS Canada") and Fraser Papers Holdings Inc ("Holdings"). Holdings owns all of the issued and outstanding shares of Fraser Timber Limited ("Timber") and Fraser Papers Limited ("Fraser Madawaska"). Fraser Madawaska owns all of the issued and outstanding shares of, and is the sole member and manager of, Fraser N.H. LLC ("Fraser N.H.").

**C. Fraser's Gorham New Hampshire Mill and Related Assets**

7. The Debtor owns and operates a non-integrated facility that produces a wide range of uncoated fresh sheet grades for printing appliances situated at Gorham, New Hampshire (the "Gorham Mill"), as well as ancillary operations related thereto. The Gorham

Mill and related assets are the principal assets to be transferred in connection with the Sale (the "Assets").

### D. Facts Related to This Motion

8. On June 23, 2010, the Debtors filed the *Motion For an Order Pursuant to 11 U.S.C. Sections 105(a) and 363 Authorizing and Approving Asset Purchase Agreement and Authorizing the Sale of Debtors' Gorham New Hampshire Mill and Related Assets Free and Clear of All Liens, Claims and Encumbrances* (D.I. 158) (the "First Sale Motion"), seeking to approve the sale of the Gorham Mill from Fraser N.H. as seller to MB Growth Partners II, LP, or designate, as purchaser ("MB Growth").

9. On July 7, 2010, an *Approval and Vesting Order* was granted by the Canadian Court approving a transaction involving a sale of the Gorham Mill, subject to satisfaction or waiver of certain outstanding conditions

10. On July 14, 2010, the Court entered the *Order Authorizing and Approving Asset Purchase Agreement and Authorizing the Sale of Debtors' Gorham New Hampshire Mill and Related Assets Free and Clear of All Liens, Claims and Encumbrances* (D.I. 171) (the "First Sale Order").

11. The transaction pursuant to the First Sale Motion was originally scheduled to close on August 31, 2010. However, M.B. Growth was unable to satisfy a condition for financing by that date, and the parties agreed to extend the financing deadline until September 22, 2010, and the closing date to September 30, 2010, pursuant to the Fifth Amendment to the Asset Purchase Agreement.

12. Despite their efforts, M.B. Growth was unable to satisfy the financing condition, and, on September 28, 2010, Fraser N.H. served the purchaser with notice of

termination.

13. Fraser N.H. is engaged in further efforts to sell the Gorham Mill on a going concern basis through a new Transaction, and has provided prospective purchasers with a form of Sale Agreement to be used in submitting offers.

E. **Canadian Proceedings**

14. Upon an offer being received and accepted by Fraser N.H., the Canadian Debtors will seek the approval of the Transaction from the Canadian Court and an Order vesting title to the Assets in the purchaser. Upon obtaining such relief in Canada, the Debtors intend to file notice in this Court.

**Relief Requested**

15. By this Motion, the Debtors seek the entry of an order (i)(a) authorizing and approving alternative Sale Procedures, (b) setting the time, date and place of a hearing to consider the sale and setting objection and bidding deadlines with respect to the Sale; and (c) authorizing and approving the Notice Procedures; (ii) approving the Sale of the Assets; and (iii) granting such other and further relief as the Court deems just and proper.

A. **The Sale Procedures**

16. The Debtors believe the proposed Sale Procedures will maximize the realizable value of the Assets for the benefit of the Debtors' estates, creditors and other interested parties, despite the unfortunate failure of the earlier approved sale to close. The Monitor is assisting the Debtors in implementing the proposed Sale Procedures in an effort to conclude a Sale of the Gorham Mill on a going concern basis as soon as possible.

17. The proposed Sale Procedures to be employed with respect to the Sale of the Assets are as follows. Parties previously indicating some level of interest in the Assets during the prior sale process are being contacted by the Monitor to determine their interest in

purchasing the Gorham Mill on a going concern basis. The Monitor is also in discussions with certain parties to obtain liquidation bids and net minimum guarantees in the event of a shut-down sale. Interested parties must submit a binding offer on a form Sale Agreement prepared by the Debtors by October 21, 2010. The Debtors, after consultation with the Monitor, will then determine the highest and best offer for the Assets (the "<u>Successful Party</u>"). The Successful Party will be notified by the Debtors on or about October 27, 2010. Final discussions to determine the Successful Party may continue past October 27, 2010, but are not expected to take longer than one additional week.

18. The Debtors intend to file the Sale Agreement with the Successful Party and the proposed final sale order in this Court as soon as reasonably possible following the October 27th selection of the Successful Party.

19. The Debtors also intend to file the Sale Agreement with the Successful Party and the proposed final sale order with the Canadian Court as soon as possible after the Sale Agreement is signed by Fraser N.H., and prior to the Sale Hearing before the Court.

20. The Debtors will present the results of the Sale to the Court at the Sale Hearing, which the Debtors request to be scheduled on November 22, 2010, at which time certain findings will be sought from the Court regarding the Sale, including, among other things, that: (i) the Sale was conducted and the Successful Party was selected in accordance with these Sale Procedures; (ii) the Sale was fair in substance and procedure; and (iii) consummation of the Sale contemplated by the Successful Party will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors, their estates and creditors.

**B.    The Notice Procedures**

21. The Debtors propose to give notice, immediately after the entry of the Sale Procedures Order (or as soon thereafter as reasonably practicable), of the Sale Procedures, the

time and place of the Sale Hearing, and the objection deadline for the Sale Hearing by sending a notice (the "Sale Notice"), substantially in the form attached to this Motion as Exhibit B, to (i) the U.S. Trustee, (ii) the Monitor, (iii) all taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iv) all federal, state, and local regulatory authorities with jurisdiction over the Debtors; (v) all non-debtor parties to relevant contracts or leases; (vi) the general service list established in these chapter 15 cases pursuant to Bankruptcy Rule 2002; and(vii) any additional parties not on the general service list who received notice of the First Sale Order granted by the Court on July 14, 2010.

### C. Request to Set a Date for the Sale Hearing

22. The Debtors intend to present the offer of the Successful Party for approval by the Court pursuant to the provisions of sections 105 and 363 of the Bankruptcy Code at the Sale Hearing to be scheduled by the Court and currently requested for **November 22, 2010 at 1:00 p.m. (ET)**. The Debtors shall be deemed to have accepted an offer only when the Court has approved the offer at the Sale Hearing and the Canadian Court has issued an Order approving the Sale of the Assets to the Successful Party.

### D. Approval of Sale

23. By this Motion, Debtors also seek approval of the Sale of the Assets to the Successful Party at the Sale Hearing, and to take all additional steps necessary to complete the transaction in an efficient and effective manner.

24. The Debtors intend to file the form of Sale Agreement with this Court as soon as it is finalized. The Debtors will also seek approval of the Sale and Sale Agreement in Canadian Court, as soon as possible after the Successful Party is determined and the Sale Agreement is executed and prior to the Sale Hearing.

### Provisions that May Implicate Local Rule 6004-1

25. Pursuant to Local Rule 6004-1(b)(iv), the Debtors are required to highlight certain provisions of this Motion relating to approval of the Sale, including:

   (a) <u>Private Sale/No Competitive Bidding</u>. No auction is contemplated with respect to this sale.

   (b) <u>Closing Deadlines</u>. The closing of the sale must occur by the end of November.

   (c) <u>Sale Free and Clear of Possessory Leasehold Interests, Licenses or Other Rights</u>. The Debtors seek to sell all of the Assets free and clear of any Liens, claims, and Encumbrances, except as specifically set forth in the asset purchase agreement.

   (d) <u>Relief from Bankruptcy Rule 6004(h)</u>. The Debtors seek such relief with respect the proposed Sale Order.

26. Pursuant to Local Rule 6004-1(c)(i), the Debtors are required to highlight certain provisions of this Motion relating to approval of the Sale Procedures Order, including:

   (a) <u>Provisions Governing Qualified Bids</u>. Parties must submit binding offers by October 21, 2010. The offer must be on the form of asset purchase agreement to be distributed to interested parties.

### Basis for Relief Requested

**A. Sale of the Purchased Assets Is a Product of the Debtors' Reasonable Business Judgment**

27. Section 363(b)(1) of the Bankruptcy Code provides: "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides in relevant part: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

28. Virtually all courts have held that approval of a proposed sale of assets of a debtor under section 363 of the Bankruptcy Code outside the ordinary course of business and

prior to the confirmation of a plan of reorganization is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the trustee or debtor-in-possession. See In re Abbotts Dairies of Pa., 788 F.2d 143 (3d Cir. 1986); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991) (holding that the following non-exclusive list of factors may be considered by a court in determining whether there is a sound business purpose for an asset sale: "the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the effect of the proposed disposition of [sic] the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised values of the property; and whether the asset is decreasing or increasing in value"); In re Stroud Ford, Inc., 164 B.R. 730, 732 (Bankr. M.D. Pa 1993); Titusville Country Club v. Pennbank (In re Titusville Country Club), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); In re Industrial Valley Refrigeration & Air Conditioning Supplies Inc., 77 B.R. 15, 21 (Bankr. E.D. Pa. 1987); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983); Stephens Indus., Inc. v. McClung, 789 F.2d 386, 391 (6th Cir. 1986); In re Ionosphere Clubs, Inc., 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989); In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale in a chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

29. The "sound business reason" test requires a trustee or debtor-in-possession to establish four elements in order to justify the sale or lease of property outside the ordinary course of business, namely: (1) that a "sound business purpose" justifies the sale of assets outside the ordinary course of business; (2) that accurate and reasonable notice has been provided to interested persons; (3) that the trustee or the debtor-in-possession has obtained a fair

and reasonable price; and (4) good faith. In re Titusville Country Club, 128 B.R. at 399; In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989); Phoenix Steel Corp., 82 B.R. at 335-36; see also Stephens Indus., 789 F.2d at 390; In re Lionel Corp., 722 F.2d at 1071.

30. Additionally, prior to and after enactment of the Bankruptcy Code, courts have permitted a proposed sale of all or substantially all assets of a trustee outside the ordinary course of business if such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. See In re Abbotts Dairies of Pa., Inc., 788 F.2d at 143; Lionel, 722 F.2d at 1063 (passim).

31. The Transaction meets the "sound business reason" test and should be approved. First, sound business purposes justify the sale. A debtor's showing of a sound business purpose need not be unduly exhaustive but, rather, a debtor is "simply required to justify the proposed disposition with sound business reasons." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984). Whether or not there are sufficient business reasons to justify a transaction depends upon the facts and circumstances of each case. Lionel, 722 F.2d at 1071; Montgomery Ward, 242 B.R. at 155 (approving funding of employee incentive and severance program; business purpose requirement fulfilled because stabilizing turnover rate and increasing morale were necessary to successful reorganization). Pursuant to the First Sale Order, a sale of the Gorham Mill and related assets was previously approved by this Court. Furthermore, as described below, the exigencies of this situation necessitate justify a sale of the Assets in the manner set forth above.

32. The Debtors believe that a prompt sale of the Assets presents the best opportunity to realize the maximum value of the Assets for distribution to the Debtors' estates and their creditors. The costs to heat the Gorham Mill are approximately $ 400,000 per month,

and the Debtors will have to permanently shut down the Gorham Mill by December if a sale is not approved by then. This will render the Debtors unable to sell the Assets as a going concern, and, furthermore, will lead to the loss of 250 jobs. Therefore, the Sale Procedures present the best opportunity to realize the highest value for the Debtors, the estates, and their creditors.

33. The proposed Transaction also meets the other factors of the "sound business reason" test. Under the circumstances of this case, the Debtors submit that the notice period proposed satisfies the requirements of the Bankruptcy Rules, see Bankruptcy Rule 2002, and provides sufficient time for parties in interest to submit objections to the proposed Sale. Accordingly, the proposed Sale satisfies the second prong of the Abbotts Dairies standard.

34. The Debtors submit that the Transaction will be the product of good faith, arm's length negotiation, designed to maximize the value received for the Assets. Accordingly, the Debtors and all parties in interest can be assured that the consideration received for the Assets is fair and reasonable, and, therefore, the third prong of the Abbotts Dairies standard is satisfied.

35. Finally, the Debtors have been and will continue to be in consultation with the Monitor throughout the negotiation process, and any material amendments or alterations require approval of the Monitor, satisfying the good faith requirement of Abbotts Dairies.

36. As set forth above, the Debtors have demonstrated compelling and sound business justifications for approving the Sale. The sale of the Assets will afford the Debtors' estates an opportunity to maximize the recoveries to creditors.

**B. Sale of the Purchased Assets Should Be Free and Clear of Liens, Claims and Interests**

37. Pursuant to section 363(f) of the Bankruptcy Code, the Debtors may seek authority to sell and transfer the Debtors' right, interest and title in the Assets to the Successful

Party free and clear of all liens, claims and interests, except permitted encumbrances as set forth in the final Sale Agreement, with such liens, claims, and interests to attach to the proceeds of the sale of the Assets, subject to any rights and defenses of the Debtors and other parties in interest with respect thereto. Section 363(f) of the Bankruptcy Code provides, in pertinent part:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f); see also In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988) (holding that section 363(f) written in disjunctive; court may approve sale "free and clear" provided at least one of the requirements is met).

38. Because the Debtors expect that they will satisfy, at minimum, the first requirement, if not others as well, approving the sale of the Assets free and clear of all adverse interests is warranted. Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically identified in section 363(f). See, e.g., In re Trans World Airlines, Inc., 2001 WL 1820325 at *3, 6 (Bankr, D. Del. March 27, 2001).

39. A sale free and clear of liens, claims and interests is necessary to maximize the value of the Assets. A sale of the Assets other than one free and clear of all interests would yield

substantially less value for the Debtors' estates, with less certainty than a transaction free and clear of all interests. Therefore, a Transaction free and clear of liens, claims and interests is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

C.  **The Successful Party is Entitled to the Benefits and Protections of 363(m)**

40. The Debtors request that the Court find that the Successful Party is entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale. Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

41. The Debtors submit that any final Sale Agreement will be an intensely negotiated and at arm's-length transaction, in which all parties will act in good faith. The Successful Party and Debtors will have separate legal counsel, and each side will diligently negotiate the transaction. Accordingly, the Debtors request that the Court make a finding that the Successful Party will acquire the Assets in good faith within the meaning of section 363(m) of the Bankruptcy Code.

D.  **Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rule 6004(h)**

42. Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P.

6004(h).

43. Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure. See generally 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. Id.

44. Because the exigencies of the situation warrant closing the Transaction as soon as practicable in order to preserve the ability to of the Gorham Mill to operate, the Debtors must close this sale promptly. Thus, waiver of any applicable stays is appropriate in this circumstance.

E. **Privacy Ombudsman**

45. Under section 363(b)(1) of the Bankruptcy Code, if the sale of a consumer customer list containing personal information relating to individual persons is inconsistent with the Debtors' consumer privacy policy, section 332 governs the appointment of a consumer privacy ombudsman. 11 U.S.C. § 332(b)(1). Here, there are no customer contracts, and the Debtors do not have a consumer privacy policy, so section 363(b)(1) does not apply, and a consumer privacy ombudsman is not required.

**Notice**

46. Notice of the Motion has been given via first-class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) the U.S. Trustee; (ii) the Monitor; (iii) all taxing authorities or recording offices which have a reasonably known interest in the relief requested; (iv) all federal, state, and local regulatory authorities with jurisdiction over the

Debtors; (v) all non-debtor parties to relevant contracts or leases; (vi) the general service list established in these chapter 15 cases pursuant to Bankruptcy Rule 2002; and (vii) any additional parties not on the general service list who received notice of the First Sale Order granted by the Court on July 14, 2010. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

47. No prior request for the relief sought herein has been made to this or any other court.

**[Remainder of Page Intentionally Left Blank]**

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed Sale Order, substantially in the form attached hereto as <u>Exhibit A</u>; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: October 15, 2010
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL, LLP

*/s/ Ann C. Cordo*

Derek C. Abbott (No. 3376)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200

-and-

THORNTON GROUT FINNIGAN LLP
D.J. Miller, Esq.
Danny Nunes, Esq.
Suite 3200, Canadian Pacific Tower
100 Wellington St. West
P.O. Box 329, Toronto-Dominion Centre
Toronto, Canada M5K 1K7
(416) 304-1616

*Counsel to the Debtors Fraser Papers Inc., et al.*